Bissell, P. J.
I have stated this controversy with extreme particularity *93 and great fullness because the facts are absolutely essential to a correct understanding of the issue and essential as a basis whereon to apply the law. The legal questions require much less consideration and a very limited argument because .the vital propositions have been determined by the adjudications of the supreme court and our own antecedent decisions. Under those adjudications as we understand them there is in reality but one open question and this respects only the construction of the act of 1887 as amended by the act of 1895,
The appellees question the propriety of the proceeding by mandamus to enforce the appellant’s rights and insist the only remedy is by bill in equity or by certiorari. Much learning and ingenuity is exhibited in their argument, and it must be conceded very large support for the contention is found in the adjudications of sister states. The whole matter, however, was made the subject of very elaborate discussion and consideration by the supreme court, and the right of parties to proceed against the land board by way of mandamus under certain circumstances analogous though not entirely similar to the present fully sustained in an exhaustive opinion. The circumstances under which this proceeding might be adopted for the purpose of effectuating asserted rights were elaborately considered and fully determined. It was adjudicated that this proceeding might be initiated as against this particular board, to wit, the state land board, and wherever their discretion had already been exercised and there was nothing left to be done but to execute an instrument, this was an act ministerial in its character, the writ could issue, and thereon judgment might be rendered compelling them to perform, a case being otherwise made out by the applicant. Greenwood Cemetery Co. v. Routt et al., 17 Colo. 156. This decision we substantially followed, announcing the same principle in Rhodes v. The Board of Public Works, 10 Colo. App. 99; Bradbury v. Alden, 13 Colo. App. 208.
It would be folly to attempt, even if we might succeed, to fortify what was so well and so accurately stated in those *94 opinions. It is enough for the purposes of this opinion to hold that mandamus will lie against the state land board to compel them to execute contracts where the rights of third parties have not intervened, and there is nothing left to be done but to perform a ministerial duty and execute a contract theretofore agreed on with respect to which rights of parties have vested. It only remains then to apply the doctrine to the facts as exhibited by this record, and to determine whether what the board did amounted to the making of a contract which the fuel and iron company have a right to compel them to carry out and wherein also the fuel company have a right to call on the land board for a written evidence of the contract into which they entered.
As preliminary to this question it may be well to dispose of a suggestion made by counsel on the argument, that the board had executed another lease to The Victor Coal & Coke Company which is outstanding, and that therefore they should not be compelled to execute another paper which would be antagonistic and perhaps involve the board and third parties who are not before the court with respect to their rights. We do not believe the position to be well taken. Counsel insist and it is undoubtedly true, and has been many times held that where rights of third parties are involved, mandamus will not ordinarily lie, but parties must proceed by bill in equity, bring those parties in, and in the suit thus initiated have their rights litigated and determined. We are quite of the opinion this case is not at all similar or in its facts analogous to those wherein this principle has been enunciated. As we view it, if we ultimately conclude what the land board did amounted to a contract between them and the fuel and iron company, the subsequent lease executed to The Victor Coal & Coke Company, was wholly invalid, they acquired no rights thereby and they are not prejudiced by these proceedings. Again, it is equally true it is not for the land board, which counsel insist is the only party represented, to contend that The Victor Coal & Coke Company are not before the court, to say that they have executed another lease, nor to *95 contest the use of this remedy because of this fact if it be one. It is not enough for a party to insist that it is impossible for him to perform the act where this impossibility has been occasioned by his own doing. Where it is the respondent’s own act which creates the impossibility, he may not plead it as a defense to the writ and the enforcement of the right. This is the general principle asserted by all text writers and is recognized by this court in The First National Bank of Northampton v. Arthur, 12 Colo. App. 90.
A further answer to the contention that a bill in equity is the only proper remedy is to my mind very strongly illustrated by the situation of the parties under existing conditions. It is undoubtedly true The Colorado Fuel & Iron Company may not file a bill against The Victor Coal & Coke Company without averring a lease and rights thereby acquired. It is a matter of grave question in my mind whether setting up the facts as they appear in the statement, a bill could be maintained against The Victor Coal & Coke Company for the cancellation of their lease, or to compel its transfer. The latter remedy of course is not at all effectual or consistent with the rights of The Colorado Fuel & Iron Company. This company is not insisting on an assignment of the lease executed to The Victor Coal & Coke Company which is totally different in its conditions from those expressed in the contract of the state land board. The assignment of the lease would neither be an adequate nor an effectual remedy, nor would it give the fuel and iron company the rights to which they are entitled, if they are entitled to any. It is equally evident they could commence no action at law to recover possession. It requires leasehold rights evidenced by an instrument executed by the proper authorities to entitle them to maintain law actions as well as bills in equity to perfect their claims and establish their rights, and we are quite unable to see how a bill in equity could be framed whereon a decree could be rendered which would give the fuel and iron company that to which it is entitled. Whatever might be the right or the rule under other circum *96 stances and other conditions, under the present, we think the one announced in The People v. Fleming, 4 Denio, 137, is entirely applicable and wholly correct. We then have a case wherein the proper remedy was adopted by the appellants subject only to the condition the case shows them to have a right and no other specific means of compelling its performance, which must necessarily be the conclusion providing we determine what the board did was lawfully done and resulted in a contract between the parties capable of enforcement.
We now come to this inquiry, the first branch of it we have already determined, and to our satisfaction at least have demonstrated that the fuel and iron company have no other remedy than the one by mandamus to enforce the right upon which they insist. Whether they had or had not this right, depends on the determination of two propositions: the one, the construction of the statute, the determination of its limitations and conditions; the second must be resolved from a consideration of the acts of the parties. We come to the first proposition which respects the proper construction of the statute. The theory of the trial court, as well as of appellees’ counsel, is that the act of 1895, which is quoted in the statement, contains a mandatory limitation on- the power of the board, and without the concurrence of the acts therein specified the board may not renew a lease. According to the terms of the original act of 1887, the land board was given full power to lease any portion of the lands of the state at a specified rental on a valuation, to be fixed, subject however, to this provision and this condition: if the lands contained coal, and with this only are we concerned, there is no limitation on the power of the board with reference to the terms of the lease or the time for which the demise may run. It is insisted, however, that the subsequent section found in the act of 1895 and fully quoted is applicable to coal leases as well as to leases of other lands. We do not so conclude with respect to any provision which affects the present controversy. We do not intend to construe the entire section or to determine its whole force and extent. We shall only refer *97 to those matters which may properly be used as the substratum of an argument respecting the validity of the state land board’s acts in the premises. At first blush it would seem that the first sentence in that section was wholly inconsistent with what preceded it, for it provides that no lease shall be for a longer term than ten years. It might better be argued that while the preceding section gave them the right to lease coal lands on certain conditions, it could still be adjudged that both sections were to be construed together and that the words “ upon such length of time as to the board should seem just ” was subject to the limitation of the succeeding section. We find however, the supreme court in a case entirely analogous and construing a like statute save as to the term, has concluded otherwise and has determined on full consideration that the matter of the lease of coal lands is wholly within the discretion of the board with respect to the term and the conditions on which the lease may be granted. In re Leasing State Lands, 18 Colo. 359.
This difficulty then is obviated and we now come to the next provision, which is substantially that when any lease expires by limitation the holder may renew at any time within the thirty days next preceding, if he notifies the register of his desire. If the lessee and the board agree as to the valuation a new lease may be issued bearing even date with the expiration of the old one and upon like conditions. The position taken by the appellees and confirmed by the lower court is that this is a mandatory limitation on the power of the state land board with reference to leasing coal lands. It is quite impossible for us to follow counsel or the court below and accept the argument which leads to this conclusion. If the section which contains a direct limitation as to time has no relation whatever to the powers of the land board with reference to leasing coal lands, we are quite unable to see why this provision respecting the renewal of leases may likewise be so far extended as to be regarded as a mandatory limitation on their powers. It is one of the cardinal rules of statutory construction that the object and purpose of a pro *98 vision may be considered in order to determine its proper construction. Just exactly what the legislative intent was is exceedingly difficult to ascertain. We presume the purpose may have been to secure to the lessee a sort of preferential right to continue in the occupancy of the land and in the renewal of his lease providing he complies with this condition. But it is to be observed, however, he has by the terms of the statute no such preferential right. If the lessee, whether it be of agricultural or coal lands, assuming the provision to be applicable to the latter, makes an application to renew the lease within the thirty days next preceding the expiration of his term, the land board is under no obligation whatever, as the law now stands, to grant a renewal upon the same or upon any other terms. The whole thing is left to the absolute discretion of the board. It must therefore follow, if the discretion is left with the land board to grant or refuse, even though the application be within that time, this limitation is no restriction on its power. It would seem to follow that if this condition was essential and a mandatory limitation, the filing of the petition by the lessee within that time would necessarily be operative to compel the board to act. .This however is not true. The board may or may not act, whether the petition be or be not filed within that time. It must therefore follow, that this is not a limitation on the power granted but a restriction or an obligation on the lessee to file his petition within that time, and one which deprives him of any equitable right to insist on a renewal- if he fails to file it, at least within thirty days before its expiration. The phraseology of the section is questionable, and if it were necessary we should be very much inclined to hold that the word “ within ” was equivalent to “ at least,” and that the intent of the legislature undoubtedly was to require the lessee to file his application for renewal at least thirty days before the time of its expiration, that the board might have an opportunity to investigate the propriety'of the renewal, seek other lessees, and make such provision as would seem in their judgment wise in order to *99 derive a revenue from the state lands. . We find, however, as a continuing part of this provision, that the lessee and the land board must agree as to the valuation of the land and if they do, a lease bearing even date with the old one and under similar conditions may be issued. The subsequent provision however is that the former valuation may not be decreased without the consent of the board, and a further provision is found herein that nothing shall prohibit the board from leasing the land to such party as shall procure to the state the greatest revenue. These provisions are wholly inconsistent with the evident purpose and policy of the legislature with respect to coal lands. Under the decision of the supreme court the power of the board with reference to coal lands is exceedingly broad, and not subject to any of the limitations as to time provided in this section, nor with reference to any condition unless the conditions to which we have last referred are applicable. This we do not believe. There is no provision for the valuation of coal lands either by statute or by practice. The leases are granted on the payment of royalties, and the royalties are determinable by the board, measurable only by their judgment and discretion. On the expiration of the lease there is no revaluation ; it is simply for the board to determine what royalty they will insist upon, what conditions they will impose and for what term they will lease the lands. We do not believe that these are applicable to coal lands or are limitations on the power of the board with reference to leasing such property so long as the law is as has been declai’ed by the supreme court, that the original specific limitation of time or term has no application to coal leases. We might have concluded it was the legislative purpose to give the lessee a preferential right of renewal but for the provision that nothing in the section shall prohibit the board from leasing the land to any party who shall pay the greatest revenue to the state. This detroys the force and effect of the provision in that aspect of it, and it really seems to stand without any very definite legislative purpose and object, either as a limitation on the *100 power of the board or as one granting a right to the lessee of state lands. Under these circumstances we may not conclude, under any rule of statutory construction with which we are familiar, that this is a mandatory limitation on the power of the board. As we look at it, there is another answer to the position that the board was without the power to make the contract which they attempted to execute. It cannot be affected by the provision, however it may be interpreted, because though the fuel and iron company made an application to renew the lease the board did not act on that application in the form in which it was presented, but at their own suggestion the application was practically abandoned or turned into an application for a new lease. The record shows that at the time the application was made the board suggested that in the matter of the renewal of No. 5244 the fuel and iron company should surrender their lease and accept a new one from the board for a fixed term and for larger royalty, to wit, a minimum royalty of $200 per annum in place of a royalty of $60.00 which had theretofore prevailed. Accepting the suggestion, the record shows the fuel and iron company did surrender the old lease which was accepted and then made a contract with the state land board for a new lease, for a definite term, for a specific royalty, and subject to the usual conditions which must be taken to be the conditions contained in the former lease No. 5244. This being true, the question as to the proper construction of the statutory provision and its applicability to other leases would seem to be wholly removed from necessary consideration. The question however being presented we deemed it best to express our opinion about it and rest our conclusion on both grounds.
We now come to the second proposition which is, what is the legal effect of what the state land board did, according to the facts disclosed by the evidence, and exhibited by its record ? The Colorado Fuel & Iron Company were lessees of section 36 and had been for some years in possession of it and prosecuted their work with reference to its ultimate *101 exploration and development. They were the owners or lessees, it is irnimpontant which. In developing the Pictou mine they had run their upper levels to strike the upper vein which was found to be too thin to be worked at a profit. The workings on the second vein were being extended in the direction of the land, and as far as explored the coal was much thicker and of good quality. Under these circumstances it was essential for The Colorado Fuel & Iron Company to procure an extension of their lease or a new one for a term sufficient to warrant the expenditure necessary to the opening up of the property. Thereupon they made the application set out in the record. Thereon the land board proceeded to act. Under its suggestion the original lease was surrendered, the land board proceeded under the statute and in the full exercise of their authority to consider and determine whether or not a new lease should be granted and if so, upon what terms. They reached a conclusion and expressed it in their record, and according to it, the board ordered that on the surrender of the old lease a new one should be granted for ten years at a minimum royalty of $200, and otherwise upon the usual terms, reciting in their record that the old lease was numbered 5244. Thereupon the fuel and iron company paid its half year’s royalty by transmitting its check for $100 the amount of it, with $1.00 for recording fees, which were accepted by the proper officer of the state land board, and never returned or offered to be returned until several months afterwards and the happening of the circumstances which gave rise to this controversy. The only thing then left to be done was the formal execution of the lease. Its terms were agreed on. The term was stated. The royalty was specified. The former lease was referred to, the general conditions of which would necessarily be the general conditions of the new lease in the absence of other agreement. They were not entirely established by proof and the appellant should have offered proof respecting the usual conditions of mining leases and this might have been essential for the purpose of a just expression of their rights by decree. We do not be *102 Heve however that the absence of this proof is enough to warrant us to affirm the judgment when otherwise we conclude the judgment is entirely wrong with respect to the fundamental questions on which it rests. This being the situation it seems to us very clear, that when all these facts, circumstances, papers and records are taken into consideration, there is enough thereon and therein to make a complete and specific contract between the parties, and vest a right in The Colorado Fuel & Iron Company which they have a right to enforce and which can only be effectuated by the mandamus proceedings which were adopted. The absence of a formal paper, to wit, a lease, is not enough to debar the lessees or to prevent the enforcement of their right as between them and the state land board. As between private individuals this has been adjudged enough. Post v. Davis, 7 Kan. App. 217.
Most lawyers would concede that as between private individuals the result would be a lease between the parties enforcible by proper action either at law .or in equity to protect the lessees’ rights. The only difference between this case and one between private individuals is that in all probability, though we do not directly decide it, a bill would not He against the state land board, which is a part of the executive department of this government. We can see many difficulties in the way of maintaining an action at law against the state land board; they could not be compelled to respond in damages for failure to carry out their contract, and it is certainly a doubtful question as to whether a bill in equity for specific performance would He as against them. Mandamus will He to compel the execution of this lease as the supreme court has directly decided. It is the only adequate and specific means of compelling performance, and when once the lease is executed, which is a ministerial act, whatever rights the fuel and iron company may have will be adequately protected, and they can bring such action at law or suit in equity based thereon as they are entitled to maintain. We thus reach the conclusion that what was done amounted to *103 a contract sufficiently executed to warrant mandamus, that there was nothing left to be done except the ministerial act of executing the paper, and that this act may be compelled by this proceeding.
There are very grave doubts in our minds, though possibly it may not be essential to the decision of the case, whether it was within the power of the land board to rescind the action of their predecessor and make a new contract which would be of any value or validity. Similar action was attempted by a subsequent secretary of the interior under a second administration, acting under an act of congress, and the supreme court of the United States in a well considered case, held the subsequent secretary could not either interfere with, modify, reverse or set aside the action of his predecessor when rights of third parties had intervened and become vested. Noble v. R. R. Co., 147 U. S. 165.
If this be the law with reference to the officers of the general government, we see no reason why it should not be applicable to the land board of the state under successive administrations. In this case, under a former governor and former land board, a new lease was attempted to be made, or a contract made between the board and the fuel and iron company. When they paid their money or gave check which was its equivalent as it was accepted by the proper officer, their rights became vested and they had a right to insist thereafter that a new lease should be executed in accordance with the action then taken. We are quite unable to see how it was within the power of a subsequent administration and a new board to rescind that action, deprive a party of rights which had already vested and arbitrarily in the exercise of their discretion, determine that what their predecessors had done, was neither right, lawful nor expedient.
It may be wholly unnecessary to refer to the motion with respect to the striking out of the opinion of the lower court. As we conceive, the motion would never have been made but for.the desire of counsel to rely on the general finding incorporated into the judgment, to the effect that the court *104 found the issues in favor of the defendant as against the plaintiff, therefrom deducing the conclusion that the court found all the facts with the defendant, and those facts being found with the defendant the plaintiff could not successfully sustain his appeal. Not contesting the general rule which prevails in such cases, we think this court has .the right to resort to the opinion of the judge presiding at the trial in order to ascertain the basis on which he rests his conclusion. We do not at all criticise the incorporation of the opinions of the lower courts into the record. On the other hand, they are frequently of great aid and assistance to the court in determining where the right lies as between the litigants, they are frequently lucid and satisfactory statements of their conclusions respecting the facts, and we often derive great aid from the well considered expositions of the law which are deemed applicable to the controversy. Instead of criticising their incorporation, we are inclined to commend the practice.
We now refer to the cross assignments of error. As we look at it, the propriety and character of the practice is well settled. Under the statute, parties have a right to file cross assignments of error and thereon obtain the opinion of the appellate court that they may obtain such ruling as shall be a guide and a benefit to the lower court, to them, and to their clients in the litigation which may be continued on a reversal of the case.
This brings us to the consideration of what seems to be the only question raised by the cross assignment which is at all important. This is the matter of fraud which is alleged as a reason or a basis for the subsequent action taken by the state land board. We do not believe that there is either in the answer or in the evidence any proof whereon a claim of fraud can be predicated or which will constitute a defense to this application. The only particular fraud averted to is found in the affidavit of Mr. Kebler which states his belief that if there is any workable coal in the section, it is so located that it is not practicable to work it from the surface at any point on the section, but only from adjacent ground. This is not *105 a statement of an absolute fact upon which the state land board would have the right to rely in determining whether or not they should extend the lease or grant a new one. By its very terms it is simply the belief of the manager, and it is evident from its very language that it is simply the expression of an opinion, and that opinion respects a matter as fully within the knowledge of the lessors, to wit, the state land board as within the knowledge of the lessee which was prosecuting the work in the Pictou mine. The matter was wholly open to the knowledge and the investigation of the land board, and in fact these very records demonstrate that after this controversy arose they sent an inspector down to examine the property, determine its geological condition, its practical situation and probable value. This might as well have been done prior to the time the board took its action as afterwards, and we do not believe that the evidence which was offered in that direction either tended to establish fraud, or if true, would have demonstrated fraud sufficient to warrant the court to set aside the lease or refuse to compel its execution. In a somewhat similar case this court reached a similar conclusion from which we see no reason to recede. The People v. Tynon et al., 2 Colo. App. 131.
We do not regard the evidence which was offered to the proposition that the representation influenced the action taken by the board was sufficient either in terms, form, substance or character to justify any judgment on that question. What was stated in the affidavit was not stated in such form that the board had a right to rely on it, nor did the evidence which was introduced tend to show that the board did rely upon that statement as a substantive fact upon which to predicate their action. The evidence of the members of the board was not satisfactory in that direction, nor does it serve to convince us that the board relied on the affidavit at the time they made the lease or made the order which was found in their record. Taking it altogether as a matter of law, we should be compelled to hold that there was no evidence that the board relied on that affidavit in such a way as to conclude *106 the fuel company, or that the court might find their representations to be fraudulent in such a legal sense as to deprive the fuel company of their present remedy.
The only other question which it seems to us necessary to consider is with respect to the legality of the meeting and the service of notice upon the various members of the board. We are ready to admit there was a decided conflict of testimony as between the register of the state land board and Mrs. Peavey and her assistant. We do not feel called on to decide this question and our reference to it is made more out of deference to counsel than because of a necessity for its decision. The opinion of the lower court is direct to the proposition, and it states its conclusion from the evidence that the meeting of December 30, was valid, and that the burden was on the defendants to show its invalidity. The court held the presumption to be, that the officer did his duty, and states that the evidence respecting the notice was contradictory. He concludes that the proof presented by the defendant which was unquestioned was insufficient to overcome the evidence of the register and the presumption in favor of the regularity of the meeting. We agree with him upon the record. The conclusions of the trial court on these several matters are wholly supported, entirely right, and with them we are in full accord.
So far as we can see we have discussed and disposed of all matters essential to the determination of the issue. The opinion is greatly extended, and we perhaps decide some questions which are not absolutely essential to the case, but it has been so well presented, so thoroughly and ably argued by counsel in their briefs and at the bar, that we felt compelled to unduly protract this opinion in order to dispose of the various questions to which they seem to attach such great importance. The controversy is one involving large interests. Much money has been expended by the contending parties, and while theoretically The Victor Coal & Coke Company «are not before the court, the attorney’s signature attached to the brief and the proof offered that they have expended a *107 large amount of money, relying upon the action of a branch of the executive department of the government, compelled us to spend perhaps an undue amount of time and labor in attempting to correctly resolve the controversy. We believe we have accurately decided it, that the conclusion of the lower court was wrong, and its judgment must, therefore, necessarily be reversed.

Reversed.